9952

GRAHAM v. STATE.

(96 S. E. 138.)

1. CONVICTS—POLICE POWER—EMPLOYMENT.—The provisions of a law relating to the care and employment of convicts are embraced within the police power of the State.

2. CONVICTS—EMPLOYMENT OF CONVICTS—CONTRACT.—A contract with board of directors of penitentiary for employment of convicts under an existing law is subject to the State's right to change its policy with reference to the employment of convicts.

3. CONVICTS—CONTRACT—MORAL OBLIGATION.—Conceding that a contract for employment of convicts was rightfully rescinded in the exercise of power impliedly reserved to the State, circumstances may have given rise to a moral obligation, to compensate which the State had the right to legislate.

4. CONVICTS—CONTRACT—CONSENT TO BE SUED.—By Act Feb. 18, 1916 (29 St. at Large, p. 1196), authorizing plaintiff to bring an action against the State "for the recovery of such damages, if any, as he may have suffered by the abrogation of his contract" for employment

of convicts, which contract was abrogated by Act March 1, 1913 (28 St. at Large, p. 210), the State waived defense that plaintiff's contract was annulled in the rightful exercise of a sovereign power, as well as its immunity from suit, the words "if any" referring to damages and not to liability.

5. STATUTES—CONSTRUCTION—PRESUMPTIONS.—In construing a statute, it must be presumed that the legislature knew the law, and that there was no intention to do a futile thing.

Before SMITH, J., Richland, Summer term, 1917. Affirmed.

Action by John M. Graham against the State of South Carolina. From an order overruling demurrer to the complaint, the State appeals.

*Mr. Attorney General Peeples* and *Messrs. W. H. Townsend* and *Cole. L. Blease,* for appellant, submit: *The act permitting suit (27 Stats., 1196) creates no cause of action—imposes no liability as against the State, where none existed independently of it. It merely provides a remedy for a cause of action, if any, which plaintiff might have, under "the principles of law governing his (i. e., the) right to a recovery in said action (i. e., authorized to be brought) as would govern the case if the action were against a corporation organized under the laws of the State of South Carolina." Nor does it waive any defense:* 58 Wash. 329; 123 Pac. 450; 30 A. & E. Ann. Cas. 1033, 1035; 27 Wash. 288; 67 Pac. 583; 8 R. C. L. 422, note 11; 117 N. C. 505; 23 S. E. 443; 83 Am. St. Rep. 600; 32 L. R. A. 553; 103 S. C. 535, 536; 118 N. Y. App. Div. (dissenting opinion) 85; 50 S. C. 502, 511; Crim. Code, secs. 972, 973 and 980; 29 Stats. 210; 18 S. C. 471; 21 S. C. 182; S. C. Const. (1895), article. VII, sec. 2; 87 S. C. 270; 87 S. C. 283; 21 S. C. 182; 18 Wash. 73; 42 L. R. A. 33; 42 L. R. A. (note) 1 to 72; 144 Mass. 60; 9 Heisk (Tenn.) 100.

*Messrs. Lyles & Lyles,* for respondent.

April 18, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This appeal is from an order of the Circuit Court, overruling a demurrer to the complaint for insufficiency. On August 10, 1910, the board of directors of the State penitentiary, by authority of law, entered into a contract with plaintiff, whereby they.agreed to furnish him, for the purpose of conducting a hosiery mill within the walls of the penitentiary, the labor of from 200 to 350 convicts of a specified class, at a stipulated rate of hire, for a term of five years, beginning February 1, 1911. They agreed, also, to furnish the building, which had been erected and equipped for that purpose, and to supply it with steam heat and water, and keep it in repair, and to care for and maintain and guard and control the convicts, so that plaintiff was not responsible for the sanitary conditions incident to the operation of the mill. The mill was then in operation, and had been for some years before; and the operation thereof was continued, under the contract, until November 1, 1913, when it was discontinued on account of an act of the legislature, by which the contract, which was specifically referred to in the act, was abrogated from that date. Act March 1, 1913 (28 St. at Large, p. 210). The act declared that the mill was injurious to the health of the convicts employed therein, detrimental to the public health, and a public nuisance, and prohibited the employment of convicts therein, after the date mentioned. At the session of 1916 another act was passed [Act February 18, 1916 (29 St. at Large, p. 1196)], which authorized plaintiff to bring an action against the State "for the recovery of such damages, if any as he may have suffered by the abrogation of his contract," and, under it, this action was brought to recover the damages alleged in the complaint. The defendant moved to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

"In that: (1) The provisions of the law relating to the care and employment of convicts are embraced within the police power of the State; (2) that the contract in question was made subject to the right of the State to exercise such police power and to change its policy with regard to its penal system and the employment of its convicts; and (3) that the obligation of such contract is not impaired by the exercise of such powers, and plaintiff has sustained no injury in consequence of the act abolishing the said hosiery mill."

The motion was refused, and the State appealed.

The first two grounds of the motion are scarcely debatable. The proposition therein stated may be affirmed upon reason and the weight of authority. The major premise of the third proposition has been affirmed and denied by respectable authority; and the conclusion that "plaintiff has sustained no injury" depends upon whether the word "injury" is used in its recognized technical sense, as the unlawful infringement of a private right which gives rise to a cause of action, or in its popular sense, as meaning damage. We take it that the former is meant, for damage is alleged in the complaint and admitted by the demurrer.

But we are spared the necessity of considering the questions suggested by this ground of demurrer, and particularly whether the obligation of the contract was impaired by the act of 1913, which abrogated it for the reasons there stated, or whether it remained unimpaired, and the only difficulty which lay in plaintiff's path to a remedy upon that obligation was the State's immunity from suit, because there can be no doubt that, even though it be conceded that the contract was rightfully rescinded in the exercise of the power impliedly reserved to the State, and therefore sheared of its legal obligation, the circumstances may have given rise to a moral obligation to compensate the plaintiff for the damage thereby done him which the State unquestionably had the right to recognize.

Therefore the question to be decided turns upon the proper construction of the act of 1916. Did the legislature intend by that act to waive only the State's immunity from suit? Or did it intend, also, to waive the defense that the contract was abrogated in the exercise of a sovereign power rightfully exerted. The learned counsel for the State concede the former but deny the latter intent. If the former was the sole intention, the language used to express it was most inapt, and there is a good deal in the statute which has no significance at all. On the other hand, if the legislature intended to waive both immunity from suit and the defense stated, then all parts of the act may have some meaning, force, and effect.

In construing the act, elementary rules require that we presume that the legislature knew the law, and, therefore, knew that plaintiff could not sue the State without its consent, and, also that, if the defense stated were set up, it would certainly defeat his action. We must also presume, against the intention to do a futile thing, consent to be sued, and at the same time reserve the right to set up an absolutely certain defense. That construction would make the act self-destructive. The language used shows plainly that the act was adopted upon the assumption that the contract had been rightfully terminated, and that plaintiff was remediless. Moreover, it says:

"The principles of law governing his right to a recovery in said action to be such as would govern the case if the action were against a corporation organized under the laws of the State of South Carolina."

If that does not waive the defense that the contract was annulled in the rightful exercise of sovereign power, it means nothing, for certainly a private corporation could not defend a breach of its contract upon the ground stated.

The conclusion is inevitable that the legislature intended to waive that defense, and give the plaintiff the right to sue the State to have it determine by the judgment of a Court of

competent jurisdiction, according to the rules of law which would be applicable, if the action were between the plaintiff and a private corporation, what damages, if any, the plaintiff sustained by the annulment of his contract. The words "if any" refer to damages, and not to liability.

Order affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and GAGE concur.

Dissenting opinion by MR. JUSTICE FRASER.

I cannot concur in the opinion of Mr. Justice Hydrick. This is an action for loss of profits. It seems to me that the act under which this action is brought provides for three things: (1) It removes the State's immunity from suit; (2) it states the measure of the State's liability, to wit, the liability of a private corporation; (3) the Attorney General shall defend, that is, he shall set up the available defenses.

It seems to me that the words "if any" negative the idea of an admission of liability. If a private corporation would not be liable, then by the terms of the act the State is not. To illustrate, a private corporation has bound itself to sell to another a certain amount of spirituous liquor. Before the date of the delivery the State forbids the sale and delivery of spirituous liquor. The buyer could not recover his lost profits. The prohibition law is a complete defense. Whatever the legislature in its discretion may do for Mr. Graham is not before us. It seems to me the Attorney General is bound by the act to raise this question, and it should be sustained.