10494

SANDEL v. STATE.

(104 S. E. 567.)

1. TRIAL—DISCRETION OF COURT IN REFUSING TO SEND MEDICAL REPORT TO JURY ON REQUEST NOT ABUSED.—In an action against the State for the death of plaintiff's children, alleged to have been caused by inoculating them with impure vaccine furnished by the State board of health, discretion of the trial Court in refusing to send to the jury report of the director of the State laboratory, made to the State health officer, of his investigation of the circumstances, *held* not abused.

2. TRIAL—REQUEST PROPERLY REFUSED AS INVADING PROVISION OF CONSTITUTION AGAINST CHARGING ON FACTS.—In an action against the State for death of plaintiff's children, alleged to have been caused by their inoculation with impure vaccine furnished by the State board of health, the trial Court, on the ground that in so charging he might invade the provision of the Constitution against charging on the facts, properly refused to charge on plaintiff's request that the report of the director of the State laboratory to the State health officer regarding the circumstances of the deaths, being admissions of the State's officers, must be considered by the jury like any other admissions.

3. DEATH—CONTRIBUTORY NEGLIGENCE OF PARENTS GOOD DEFENSE.—Where an action for injury to or death of an infant is brought for the benefit of the parents, the contributory negligence of the parents or their agents is a good defense.

---

NOTE.—The question of contributory negligence of parent as bar to action by parent or administrator for death of child *non sui juris*, is discussed in notes in 18 L. R. A. (N. S.) 328, and 38 L. R. A. (N. S.) 754.

4. APPEAL AND ERROR—To REVIEW LACK OF EVIDENCE ON CONTRIBUTORY NEGLIGENCE, MOTION TO DIRECT VERDICT IS NECESSARY.—The lack of contributory negligence should have been brought to the trial Court's attention by motion to direct verdict on such issue.

5. DRUGGISTS—CHARGE ERRONEOUS AS IGNORING ELEMENTS OF "INTERVENING CAUSE."—In an action against the State for death of children from impure vaccine furnished by the board of health, a charge that no recovery can be had where there was any intervening cause, between the treatment and the death, in the absence of which the patients would not have died, is erroneous, as ignoring essential elements of an "intervening cause," which must be new and independent, not under the control of the original wrongdoer, or one which by the exercise of diligence he should have anticipated and guarded against, and one which breaks the continuity of causal connection between the original wrong and the injury.

6. DRUGGISTS—INSTRUCTION ON DEGREE OF CARE OWING BY MANUFACTURING CHEMISTS, PROPER.—In an action against the State for death of children from inoculation with impure vaccine furnished by the State board of health, instruction that in all cases the law requires the exercise of due care, defined to mean the care which a person of ordinary reason and prudence would exercise in the circumstances, and that the degree of knowledge, skill, and care required of a pharmacist, manufacturing chemist, is that which is ordinarily possessed and exercised by those in their special line of work, was proper.

7. DRUGGISTS—INSTRUCTION ERRONEOUS AS FAILING TO DEFINE CONTRIBUTING CAUSE DEFEATING RECOVERY.—In an action against the State for death of children from inoculation with impure vaccine furnished by the State board of health, instruction, given at the State's request, with modification, *held* erroneous as failing to specify or define the kind of contributing cause to the deaths which would defeat recovery.

8. TRIAL—INSTRUCTION NOT MISLEADING WHEN TAKEN AS WHOLE.—In an action against the State for death of plaintiff's children, alleged to have been caused by inoculation with impure vaccine furnished by the State board of health, instruction given at the State's request, with modification, that the law makes a distinction between actionable negligence and mere accident, etc., stating that when usual custom and manner of preparation are spoken of, what is meant is due care in the preparation of such articles, though slightly inaccurate and inapt to express clearly the meaning intended, *held* not misleading, taken as a whole.

9. NEGLIGENCE—PARTICULAR INJURY NEED NOT HAVE BEEN FORESEEN.— Though an injury which could not have been foreseen or reasonably

anticipated as the probable result of an action of negligence is not actionable, it is not necessary to show that the particular consequences or injury which resulted could have been foreseen, but it is enough that the negligent person should have foreseen injury of some kind.

10. CONSTITUTIONAL LAW — ACT GIVING STATE'S CONSENT TO ACTION AGAINST IT NOT DENIAL OF DUE PROCESS; "DEPRIVED."—Act March 9, 1918 (30 St. at Large, p. 1097), giving the State's consent to action against it for certain deaths, is not violative of Const., art. I, sec. 5, providing that no person shall be deprived of life, liberty, or property without due process, the provision being a limitation on the power of the State; moreover, "deprive" connotes want of consent.

11. STATUTE—TITLE OF ACT AUTHORIZING SUIT AGAINST STATE SUFFICIENT.—Act March 9, 1918 (30 St. at Large, p. 1097), entitled "An act to authorize and empower the administrator or administrators" of children, claimed to have been killed by inoculation with impure vaccine furnished by the State board of health, to bring an action against the State, held not violative of Const., art. III, sec. 17, providing every act shall relate to but one subject, which shall be expressed in its title.

12. STATUTES—ACT AUTHORIZING ACTION AGAINST STATE NOT VIOLATIVE OF PROHIBITION OF SPECIAL LAWS.—Act March 9, 1918 (30 St. at Large, p. 1097), entitled "An act to authorize and empower the administrator or administrators" of children, claimed to have been killed by inoculation with impure vaccine furnished by the State board of health, to bring an action against the State, held not violative of Const., art. III, sec. 34, prohibiting the enactment of special laws on certain specified subjects, and providing that in all other cases, where a general law can be made applicable, no special law shall be enacted.

Before SEASE, J., Richland, March term, 1919. Reversed.

Action by J. O'Neal Sandel, as Administrator of the Estate of Minnie and Thelma Sandel, Deceased, against the State of South Carolina. From judgment for defendant, the plaintiff appeals.

*Messrs Colcock & Colcock, Cole. L. Blease, Wm. N. Graydon* and *C. S. Monteith,* for appellant. *Mr. Graydon* cites: *Deceased children under five years of age, conclusively presumed to be incapable of contributory negligence:*

29 Cyc. 537; 11 S. C. 77. *Nor could negligence of parents be imputed to children:* 66 S. C. 47; 76 S. C. 539; 81 S. C. 488; 1 Thomp. Neg., sec. 310, p. 292. *Legal effect of report of Dr. Coward should have been ruled on by Court:* Greenleaf Evid., secs. 483, 484, 171. *State liable for effects produced by vaccine even though it had passed through other hands after leaving the State laboratory:* 1 Thomp. Neg., secs. 48, 49, 52, 53, 56, 63, 66; 94 U. S. 469, 474; 24 L. Ed. 256; 95 S. C. 130; 25 L. Ed. 395; 92 S. C. 329; 109 S. C. 119; 101 S. C. 62. *Improper test applied to skill necessary for manufacturing chemist:* 110 S. C. 560. *Court erred in defining "due care" as the "usual precautions:"* 185 U. S. 468; 47 L. Ed. 905; 81 S. W. 760. *Demurrer of defendant properly overruled:* 109 S. C. 301; 113 S. C. 466; 101 S. E. 826.

*Mr. Sam'l M. Wolfe, Attorney General,* and *Alva M. Lumpkin, Acting Assistant Attorney General,* for respondent, cite: *Appellant cannot now complain about charge as to contributory negligence:* 4 C. J., par. 2625; *Id.* 717, par. 2635. *And where no evidence to support a charge, not prejudicial to charge on it:* 44 S. C. 546; 31 S. C. 525; 29 S. C. 305. *Instructions not applicable not reversible error, being without prejudice:* 4 C. J., par. 3015; *and plaintiff acquiesced in nature and theory on which case was tried:* 4 C. J., p. 719-21; 64 S. C. 104. *Error, if any, was harmless:* 71 S. C. 44; 44 S. C. 546; 72 S. C. 162; 33 S. C. 505; 100 S. C. 458; 94 S. C. 218; 93 S. C. 518; 68 S. C. 427; 44 S. C. 324. *Dr. Coward's report not such a written instrument as Court should construe:* 4 Words & Phrases 1357. *Charge of Judge as to proximate cause was correct:* 77 Wis. 174; 55 S. C. 403. *And as to degree of skill necessary, also correct:* 37 L. R. A. 830. *Elements of actionable negligence:* 9 A. & E. Enc. Law 424. *"Accident:"* 55 S. C. 403. *Plaintiff should have requested modification or amplification of charge:* 100 S. C. 435; 84 S. E. 991; 100 S. C. 138; 84

S. E. 420; 100 S. C. 458; 85 S. E. 377; 86 S. E. 30. *Fact that treatment did not result favorably in every instance, not to be construed as constituting negligence in one who administers or recommends it:* 37 L. R. A. 830-833. *Demurrer to complaint should have been sustained, as State cannot be sued for torts of its servants unless the State, through its Legislature, expressly assumes responsibility:* 4 Labatt Master & Servant (2d Ed.) 4296-97; Story Agency (7th Ed.), par. 319; 40 L. R. A. 677; 50 L. R. A. 430; 37 S. E. 187. *Not competent by legislation to bring into existence a demand for which a party was neither legally or equitably bound:* 16 Mass. 215; 15 L. R. A. 700; 9 Wheat. 720; 6 L. Ed. 199; 15 L. Ed. 991; 60 S. C. 472. *Consent of State to an action merely affords an opportunity for trial, and does not create a new liability:* 4 Labatt Master & Servant 4926-28; 36 Cyc. 915. *Special laws:* Const. 1895, sec. 34, art. III; 77 S. C. 260; 109 S. C. 8. *Title of act:* Const. 1895, art. III, sec. 17; 89 S. C. 94; 95 S. C. 104; 95 S. C. 403; 97 S. C. 205. *Due process:* 53 S. C. 259

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

By consent of the State, given by an act of the legislature (30 Stat. 1097), plaintiff brought this action for damages for the death of his two children, both under five years of age. He alleged that their death was caused by inoculating them with impure antityphoid vaccine sent out for use by the State board of health, and charges negligence in various details of the preparation and bottling of the vaccine. The defenses were a general denial and contributory negligence.

Plaintiff put in evidence a report made by Dr. Coward, director of the State laboratory, to Dr. Hayne, State health officer, of his investigation of the circumstances of the death of plaintiff's children and two others, following inoculation.

from the same lot of vaccine. The report stated, among other things, that unused portions of the vaccine from which plaintiff's children had been vaccinated were examined, and found to have been contaminated with pus germs. From the facts stated in his report, Dr. Coward concluded that some portions of the lot were contaminated in the bottling, and from the hands of the person who did the bottling, and that the death of the children were caused by protein poison, which is explained in his report.

The medical experts who testified for plaintiff and the State differed as to the cause of death. Those who testified for plaintiff thought that it was caused by the contamination, or, at least, that it might have been so caused, though some of them said there might have been contributing causes, but no contributing causes were mentioned, except one suggested by Dr. Coward, which was eliminated by the testimony. The experts who testified for the State were of the opinion that death could not have been caused by the presence of pus germs in the vaccine, at any rate, not within the time that elapsed between vaccination and death, which was from 19 to 36 hours.

Plaintiff's evidence tended to prove some of his specifications of negligence, and the State's evidence tended to prove due care, and that the methods observed and practiced in the preparation and bottling were the same as those followed in the best laboratories. The verdict and judgment were for the defendant.

Plaintiff excepts to the refusal of the Court to send Dr. Coward's report to the jury, upon their request. The Court informed the jury that they might come in and have the report, or any other testimony, read over to them, if they wished. It is the usual practice to send all documentary evidence to the jury, unless there is some reason for not doing so; for example, if the documents contain matter which might confuse or mislead the jury, or

if they contain irrelevant or incompetent testimony, which cannot be separated from that which is relevant and competent, or if it would be unfair to one of the parties by reason of bringing more prominently and vividly before the jury the testimony of the other, and for other reasons which may occur, the Court may decline to send to jury particular documents in evidence. It is a matter that must be confided to the sound discretion of the trial Court, with whose decisions this Court will not interfere, except where there has been abuse of discretion. In this case, we think the discretion was wisely exercised. *Robertson v. Millar,* 1 McMul. 120; *Means v. Means,* 7 Rich. 533; *Church v. Elliott,* 65 S. C. 251, 43 S. E. 674; *State v. Barwick,* 89 S. C. 152, 71 S. E. 838.

Plaintiff's third request was: "That the report of Dr. Coward, and the State board of health, being admissions of its officers, must be considered by the jury, just as any other admission made by a defendant in a cause."

In response, the Court said: "In place of charging you plaintiff's third request, I charge you that you are to consider all the testimony. I think it would be unfair, and very likely I would invade the provision of the Constitution (against charging on the facts) to call your attention to any particular piece of testimony. All I can charge you is that all the testimony has come out, and you must consider it one way or the other."

The request was properly refused for the reason stated. The instruction given instead of it was all that plaintiff was entitled to.

Error is assigned in the charge as to contributory negligence, because plaintiff's intestates are conclusively presumed, from their age, to have been incapable of contributory negligence, and the negligence of their parents cannot be imputed to them. The grounds stated are correct, but inapplicable. They would have been

applicable in an action brought for the benefit of the infants. But where an action for the injury or death of an infant is brought for the benefit of the parents, as in this case, the contributory negligence of the parents, or their agents, is a good defense, because in reason they cannot hold defendant liable to them for the consequences of their own negligence. No one is allowed to take advantage of his own wrong. *Berger v. Railway,* 93 S. C. 372, 76 S. E. 1096; *Kilpatrick v. Spartanburg,* 101 S. C. 334, 85 S. E. 775.

The charge as to contributory negligence might have been omitted, because there was no evidence to sustain that defense. There was testimony that there might have been contributing causes to the death of the children, but none tending to prove any such cause due to plaintiff's negligence. If the lack of evidence to sustain that defense had been brought to the attention of the Court by a motion to direct the verdict on that issue, as it should have been, the issue would have been eliminated.

In a general charge that was remarkably clear, perfectly fair, and free from error, the Court laid down the applicable principles of law. We have discovered no error, except in some of defendant's requests. They were not numbered, as they should have been, for convenience of reference. The first in order, as modified by the Court, was as follows: "In an action for the death of a patient through the alleged negligence of the one manufacturing, dispensing, or administering treatment, no recovery can be had where there was any intervening cause, in the absence of which it is reasonably probable that the patient would not have died."

The Court: "I charge you that, in connection with what I have already charged you, that the plaintiff is called upon to prove that the negligence existed, and that that negligence was the direct and proximate cause of the injury and damage complained of—the death of the children."

The Court erred in charging: "No recovery can be had where there was any intervening cause, in the absence of which * * * the patient would not have died."

The request ignored some of the essential elements of an intervening cause which will shield the original wrongdoer from liability. Such an intervening cause must at least be new and independent, not under the control of the original wrongdoer, or one which by the exercise of reasonable foresight and diligence he should have anticipated and guarded against. It must break the continuity of causal connection between the original wrongful act or omission and the injury, so that the former cannot be said to have been the efficient cause of the latter.

Let us illustrate from the famous squib case (*Scott v. Shepherd,* 2 W. Bl. 892). The injury did not result immediately from defendant's act in throwing the squib upon another; and, if that person had not thrown it upon another, and if the last man had not thrown it upon the plaintiff, he would not have been injured. There we have an intervening cause, in fact, several of them, in the absence of which the plaintiff would not have been injured. Nevertheless, the defendant was liable to the plaintiff, because he had wrongfully set in motion a force which continued to operate until it caused the injury. The causal connection between the primary wrong and injury was not broken. Now if the defendant had thrown the squib where it would have caused no injury, and some one else had taken it up and started it anew on its errand of mischief, there would have been a new cause, not dependent upon, or a natural and probable consequence of, the first. The chain which connected defendant's act with the injury would have been broken, so that defendant's act would have been the only remote cause, or, as it is sometimes called, the mere condition of injury.

The test, therefore, of the sufficiency of intervening causes to defeat recovery is not to be found in the mere fact of

their existence or number, but rather in their nature, and the manner in which they affect the continuity of the operation of the primary cause, or the connection between it and the injury. If they so affect it that the injury cannot fairly be said to be the natural and probable consequence of the primary cause, they become the proximate or efficient, and the primary becomes the remote, cause. The law does not go back of the last efficient cause. *Cannon v. Lockhart Mills,* 101 S. C. 59, 85 S. E. 233; *Carter v. R. R. Co.,* 109 S. C. 119, 95 S. E. 357; *Milwaukee etc. R. Co. v. Kellog,* 94 U. S. 469, 24 L. Ed. 256; 22 R. C. L. 132-134.

The difference between intervening and concurring causes appears to have been overlooked. In operation an intervening cause succeeds or follows that which, for convenience, is called the primary cause, though, as we have seen, it is only the remote cause; but concurring causes operate contemporaneously to produce the injury, so that it would not have happened in the absence of either. If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, of course liability for it attaches. But the mere fact that one of several concurring causes may not have been reasonably anticipated is not enough to shield from liability him who sets in motion the other; for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause; that is, one that was so efficient in causation that, but for it, the injury would not have occurred. *22 R. C. L. 128.*

To illustrate: Suppose plaintiff's children had some latent weakness, say weak hearts or kidneys, but were strong enough to have withstood the reaction from pure vaccine, but too weak to have overcome the reaction from contaminated vaccine. While their weakness might, in one sense, be said to have been a concurring cause, in the absence of which death would not have ensued, nevertheless, the State

12—S. C. 115.

would be liable, provided, of course, the contamination was the result of the negligence of its agents, for, in the case supposed, the negligence complained of was an efficient cause, set in motion by the defendant, and, but for it, the injury would not have occurred.

Defendant's second request was: "The degree of knowledge, skill, and care required of a pharmacist, manufacturing chemist, physician, or surgeon is that which is ordinarily possessed and exercised by those in their special line of work."

The Court said: "I charge you that in connection with what I have already charged."

The Court had charged that, in all cases, the law requires the exercise of due care, which was defined to mean that amount and degree of care which a person of ordinary reason and prudence would exercise in the circumstances, and that it should be commensurate with the danger involved; that the greater the danger, the greater would be the care required. As modified, there was no error in the instruction. 30 Cyc. 1570; 21 R. C. L. 381.

Defendant's third request was given and modified as follows: "He could only be held responsible for the lack of proper care. And there could be no recovery against defendant, if you should find there were contributing causes, resulting in the death of the children."

The Court: "Proper care, gentlemen, means due care, and it means due care under all circumstances. A contributing cause must be a proximate contributing cause, and I have already defined to you what proximate cause means. I modify that, then: 'And there could be no recovery against the defendant, if you should find there were proximate contributing causes, directly and proximately resulting in the death of the children.' And I charge you that the mere fact that the children were vaccinated would be no contributing—no proximate contributing cause that would defeat a recovery."

This request involves in part, the error pointed out in giving defendant's first request. It fails to specify or define the kind of contributing cause that would defeat recovery.

Defendant's fifth request was charged, with modification, as follows: "The law makes a distinction between actionable negligence and a mere accident. If the contamination is found by you to have existed in the vaccine, and you further conclude that it originated in the State's laboratory, you may ask yourselves, whether or not it originated there through any negligence on the part of the defendant, or whether or not it was one of these things that come about unexpectedly, and unavoidably, commonly termed an accident. If you decide that the vaccine was contaminated, and the usual precautions" (that is, due care, I will interline there—if the usual precautions, that is, due care), "were taken to avoid the contamination, then you may decide whether or not it was the result of negligence or a mere accident. If the latter, the law says the defendant is not to be held responsible." (The words in the parentheses were inserted by the Court.)

The Court: "I charge you that, gentlemen, as I have already charged it in my own words, and I recall it to you, that if you find that the vaccine did cause the death of the children, nevertheless, unless you further find that the defendant, its agents and servants were negligent in the preparation or the distribution, or the bottling, and so forth, of the vaccine—unless you find that it or they were negligent in one or more of the particulars alleged in the complaint—then the plaintiff could not recover. In other words, the basis of this suit is negligence alleged against the State and it must be proven, of course."

Appellant construes the language of the Court to mean that if the usual precautions were observed, that would amount to due care. It is certain the Court did not intend to convey that impression. While the language used, stand-

ing alone, is possibly susceptible of that meaning, yet when the charge is read as a whole it becomes clear beyond controversy that the jury could not have so understood it, because the Court had, in giving plaintiff's second request, instructed them that "The test is, not whether the usual custom was followed, but whether due prudence and caution were exercised in the preparation of the vaccine in this instance."

And, in giving defendant's seventh request, which follows, the same idea was further emphasized, that the usual custom must measure up to the standard of due care, as previously defined and explained:

"I charge you, further, that, if you find from the evidence in this case that the defendant acted in the preparation of the serum with reasonable care—that is, due care, as I have defined it to you—prudence, and foresight, and according to the usual custom and manner of preparing such serums, then the defendant cannot be held liable for any injury resulting therefrom."

The Court: "I charge you that, with the modification, when you speak of usual custom and manner of preparation, I charge you that means due care in the preparation of such articles; and I have already told you what due care is."

While the language used was slightly inaccurate and inapt to express clearly the meaning intended, we are satisfied the jury were not misled by it, when the whole charge is considered.

The Court charged defendant's sixth request: "An injury that could not have been foreseen, or reasonably anticipated, as the probable result on an act of negligence, is not actionable."

As a general statement of the law, the request was correct. The same request was charged in *Miles v. Telegraph Co.,* 55 S. C. 403, 420, 33 S. E. 493, and approved by this Court. But, in application, the rule may need explanation;

for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted.    It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one.    29 Cyc. 493 ; 22 R. C. L. 125.

The defendant asked this Court to sustain the judgment on the grounds taken by a demurrer to the complaint, which was overruled by the Circuit Court.    The grounds of demurrer were that the act by authority of which this action was brought violates the following provisions of the Constitution : Section 5 of article I, which provides that no person shall be deprived of his life, liberty, or property without due process of law ; section 17 of article III, which provides that every act shall relate to but one subject, which shall be expressed in its title ; and section 34 of article III, which prohibits the enactment of special laws on certain specified subjects, and provides that, in all other cases, where a general law can be made applicable, no special law shall be enacted.    The demurrer was properly overruled.

The provision first cited is a limitation upon the power of the State, and was intended to protect the citizens against arbitrary action on the part of the State.    The act does not deprive any person of his·life, liberty, or property.    Nor can it be said that it may result in depriving the State of its property, for "deprived" connotes want of consent, and the State has given its consent.    Certainly, the deprivation, if it can be so called, will not be without due process of law, for that is provided for in the requirement that plaintiff's claim shall be established in an action in a Court of competent jurisdiction.    The State, acting through the legislature, had the power, which it always has and should exercise on proper occasion, to recognize claims against it, founded on justice and equity.    It may even recognize some moral

obligations.  *Graham v. State,* 109 S. C. 301, 96 S. E. 138.
The act does not create a liability which did not exist before
its passage.  The liability is one that is recognized by the
common law.  The only obstacle that lay in plaintiff's path
to the enforcement of it was the State's immunity from suit,
without its consent.  The act, therefore, by giving consent,
merely provides a remedy where none existed before.

The title of the act reads: "An act to authorize and
empower the administrator or administrators of Thelma
Sandel and Minnie Sandel, deceased, to bring an action
against the State of South Carolina."

There is no provision of the act which is not germane to
the title, or fairly within its scope.

The provision last mentioned was not intended to apply
to an act of this kind.  It has never been the policy of this
State to give general consent to be sued in the Courts on
its liabilties.  Whether it will consent or not has always
been made to depend upon the facts and circumstances pecu-
liar to each case, or class of cases, and the right to determine
each application on its own merits has been exercised by the
legislature under every Constitution that has been adopted.
It has been exercised under the present Constitution ever
since its adoption, in 1895, and in numerous cases.
Nowhere in the Constitution is there any express declara-
tion of intention to depart from that well known policy; but
a contrary intention is plainly to be implied from the cir-
cumstances and the provisions of section 2 of article XVII
that "The General Assembly may direct by law, in what
manner claims against the State may be established and
adjusted."

The letter of a particular provision will not prevail over
the clear intention to be gathered from the whole instru-
ment.  A general law, consonant with the settled policy of
the State, cannot be made applicable in the circumstances
under which this act was passed.  They were novel and

extraordinary.   Such an event never occurred before, and may never happen again.   The very nature of the case called for a special rather than a general law.

For the error pointed out in the charge, the judgment must be reversed, and a new trial granted.

Reversed.