### SIRRINE v. STATE

(128 S. E., 172)

1. STATES—STATE'S WAIVER OF IMMUNITY FROM SUIT HELD TO INCLUDE WAIVER OF IMMUNITY FROM LIABILITY FOR CAUSE OF ACTION ON WHICH SUIT WAS TO BE BASED.—Act February 12, 1924 (Laws 1924, p. 1689), specifically authorizing particular citizen of State to bring action against State for damages to automobile, *held* waiver, not only of sovereign immunity from suit, but of immunity from liability for cause of action authorized to be made basis of suit.

2. STATUTES—SPECIAL STATUTE AUTHORIZING SUIT AGAINST STATE HELD SPECIAL LAW, WHERE GENERAL LAW COULD BE MADE APPLICABLE, IN CONTRAVENTION OF CONSTITUTION.—Act February 12, 1924 (Laws 1924, p. 1689), permitting N. McL. Sirrine to bring action against State for damages to automobile, *held* a special law, where a general law could be made applicable, is in contravention of Const. Art. 3, § 34, Subd. 9, notwithstanding Article 17, § 2, authorizing Legislature to direct in what manner claims against State may be established and adjusted.

8. CONSTITUTIONAL LAW—STATUTE AUTHORIZING PARTICULAR CITIZEN TO
SUE STATE HELD VIOLATIVE OF EQUAL PROTECTION CLAUSE OF STATE
AND FEDERAL CONSTITUTION.—Act February 12, 1924 (Laws 1924, p.
1689), permitting N. McL. Sirrine to bring action against State for
damages to automobile *held* in effect a granting of special privilege
to one citizen of State in violation of equal protection law clauses
(Const. U. S. Amend. 14, Const. Art. 1, § 5), notwithstanding
Article 17, § 2, providing that General Assembly might direct in
what manner claims against State may be established and adjusted.

4. CONSTITUTIONAL LAW—LEGISLATIVE DECISION THAT GENERAL LAW
WOULD NOT SUFFICE, EVIDENCED BY ENACTMENT OF SPECIAL LAW, IS
ENTITLED TO WEIGHT, THOUGH NECESSITY FOR SPECIAL LAW IS ULTI-
MATELY JUDICIAL QUESTION.—General Assembly's enactment of
special law in effect records its decision that general law could not
be made applicable, and under rules of constitutional construction,
every reasonable presumption must be indulged in favor of validity
of that decision, though question whether general law could have
been made applicable is ultimately judicial question.

5. STATUTES—LEGISLATIVE DISCRETION IN ENACTING SPECIAL LAWS CAN-
NOT BE EXTENDED BEYOND LIMITS MARKED OUT BY ORGANIC LAW.—
Range of Legislative discretion in enacting special laws cannot be
extended beyond limits marked out by organic law.

Before MAULDIN, J., Greenville, July, 1924, Reversed.

Action by N. McL. Sirrine against the State of South
Carolina. From an order overruling a demurrer to the
complaint defendant appeals.

*Mr. S. M. Wolfe, Attorney General,* for appellant, cites:
*State not liable for torts of its servants in absence of stat-
ute:* 7 Labatt's Master & Servant (1913 Ed.), 7661; 15
L. R. A., 700; 119 S. E., 869; 13 A. L. R., 1277. *State's
consent to be sued construed:* 26 A. & E., 487; 36 Cyc.,
915 and cases cited. 7 Clodw. (Tenn.), 306; 27 Wash.,
288; 67 P., 583; 68 Wash., 129; 42 L. R. A. (N. S.), 251;
123 P., 450; Ann. Cas., 1913-E, 1033; 98 Wis., 481; 42
L. R. A., 39; 74 N. W., 111; 123 Cal., 316; 55 P., 1000; 5
Am. Neg. Rep., 289; 96 N. Y., 71; 48 Am. Dec., 507.
*Constitutional provision for suit against state not self-
executing:* 96 Ohio St., 513; 118 N. E., 102; 248 U. S.,
32; 63 L. Ed., 108; 39 Sup. Ct. Rep., 16.

*Mr. W. G. Sirrine,* for respondent, cites: *Legislature presumed not to intend futile Act:* 109 S. C., 301. *Counties and municipalities liable for negligent repair of highways:* Code, 1922, Vol. 3, Sec. 2948, 2950, 4478. *Power of State to recognize claims:* 115 S. C., 170. *"Claim" defined:* 16 Peters 615; 10 L. Ed., 1089; 9 Cal., 616; 83 N. Y., 516. *Words and Phrases.*

May 12, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The appeal is from an order of the Circuit Court overruling a demurrer to the complaint in an action brought under the provisions of the following Act of the General Assembly, approved Feb. 12, 1924, (Laws 1924, p. 1689):

"An Act permitting N. McL. Sirrine to bring action against the State of South Carolina.

"Whereas, it is alleged that in July, 1922, a uniformed member of the Markley Guards, a company of the National Guard of South Carolina, while negligently driving an automobile truck under the control of that organization and preparing for the State encampment the following day ran into the enclosed automobile belonging to N. McL. Sirrine and damaged the same in the sum of nine hundred ($900.00) dollars; and

"Whereas, it is claimed that the driver of the enclosed automobile was in no wise in fault, but the accident was due entirely to the driver of the truck; and

"Whereas, the owner of the automobile is without recourse to sue and recover even if entitled to it, and will lose the entire amount of the damage if no judgment is recovered:

"Be it enacted by the General Assembly of the State of South Carolina:

"Section 1. That permission is hereby granted N. McL. Sirrine to prosecute an action against the State of South

Carolina in any Court of competent jurisdiction, whereby she may seek to recover not exceeding the sum of specified in the above preamble, and costs, and that she may proceed in the prosecution of said cause in like manner as all causes arising between individuals or corporations in this State may be conducted: Provided, that nothing in this Act shall be construed into an admission by said state of any facts hereinabove stated or of any liability of the same on account thereof; and it is further provided, that the State nevertheless expressly reserves to itself in any action which may be brought hereunder, any defense which would be available to any individual or corporation, defendant in like circumstances.

"Sec. 2. That this Act shall take effect immediately upon its approval by the Governor."

The complaint is not set out in the record, but it is therein stated that such complaint "was predicated upon an alleged tort, to wit, an accident resulting from the collision between the automobile being driven by W. G. Sirrine and a military truck being driven by a member of the Markley Guards, of Greenville, S. C., a company of the State's militia or National Guard."

The demurrer was based substantially upon two grounds: (1) That the State's immunity from liability for the tort of an agent or servant was not waived by the statute under which the action was brought, and hence that the complaint stated no cause of action; and (2) that, if the Act be construed to waive the State's immunity from liability for such a tort, or to create a liability therefor, it was a special law, where a general law could be made applicable, in contravention of subdivision 9, § 34, Art. 3, of the Constitution of 1895.

As to the first ground: In the cases of *Graham v. State,* 109 S. C., 301; 96 S. E., 138, and *Sandel v. State,* 115 S. C., 168; 104 S. E., 567; 13 A. L. R., 1268, Id. (S. C.), 119 S. E., 776, construing statutes very

similar in character and tenor to that here in question, this Court held that the effect of such legislation was not only to waive immunity from suit, but also to waive the State's legal immunity as a sovereign from liability for the causes of action which the Legislature authorized to be made the basis of a suit against the State. For that view in *Graham v. State, supra,* the Court (Mr. Justice Hydrick) assigned the following cogent reason:

"In construing the Act, elementary rules require that we presume that the Legislature knew the law, and, therefore, knew that plaintiff could not sue the State without its consent, and, also, that if the defense stated were set up, it would certainly defeat his action. We must also presume, against the intention to do a futile thing, consent to be sued, and at the same time reserve the right to set up an absolutely certain defense. That construction would make the Act self-destructive."

While there are certain differences in verbiage between this Act and the statutes construed in the *Graham and Sandel Cases*—differences which might plausibly be held to justify the application to this case of the view of the law, announced and discussed in the very able dissenting opinion of Mr. Justice Cothran in *Sandel v. State* (S. C.), 119 S. E., 776, 791, 797, that the effect of such a statute is merely to waive immunity from suit and not immunity from liability—we are of the opinion that, considering this statute as a whole, the same reason exists for construing it as a waiver of the State's immunity from liability and as an assumption of liability as existed in the *Graham* and *Sandel Cases.* The Act, after incorporating a proviso to the effect that neither the facts as recited nor liability on account thereof was admitted, undertakes expressly to reserve the defenses to which the State should be entitled, as follows:

"And it is further provided, that the State * * * expressly reserves to itself in any action which may be brought here-

under, any defense which would be available to any individual or corporation, defendant in like circumstances."

If the Legislature intended to reserve the right to set up the all-inclusive and absolutely certain defense of the State's immunity from liability as a sovereign, why expressly reserve defenses which would be available to an "individual or corporation"? Under the principle of *expressio unius est exclusio alterius,* the express reservation of such defenses negatives an intent to reserve as a defense the State's exemption as a sovereign from liability for the torts of its servants and agents.

Nor do we think there is merit in appellant's contention that the equivalent of that defense was reserved to the State by the proviso above quoted upon the theory that as "any corporation" includes a municipal corporation, which cannot be held liable for the tort of a servant or agent under the principle of *respondeat superior* in the absence of an enabling statute (*Hiott v. Walterboro* [S. C.], 119 S. E., 869), it was the intent of the Legislature to make that defense available to the State in this action. Such technical, if not strained, construction may not, as we apprehend, soundly be given to language of the proviso when the meaning of the Act as a whole is tested by the rule of reason applied in the *Graham Case*. It should not lightly be presumed by this Court that the supreme legislative power of the State by enacting this statute intended merely to engage in the futile, if not foolish, business of rehearsing the sovereign State of South Carolina in the role of the mother of the nursery tale who sent her small boy to the river to bathe, with the admonition that he should hang his "clothes on a hickory limb, but not go near the water." If the statute was not intended to give Mrs. Sirrine a right to recover against the State for the tort of one of the State's agents or servants under the principles of law applicable in a suit against a private individual or corporation, the enactment of the statute was an idle gesture. We conclude, therefore,

that the application of the primary rule of construction—
that the controlling consideration is legislative intent—re-
quires that the statute be construed as an Act which under-
takes to waive the State's immunity as a sovereign from
liability for the torts of its agents or servants to the extent
that would enable Mrs. Sirrine to recover in the action au-
thorized if she were entitled to recover against a private
individual or corporation under like circumstances.

      As to the second ground: So construed, is the Act
2  such a special law, where a general law could be
      made applicable, as contravenes subdivision 9, §
34, Art. 3, of the Constitution?

That the Act is a special law in nature, scope, and effect
is not open to question. That a general law could have
been enacted which would have been equally effective to
confer upon Mrs. Sirrine the right and remedy afforded by
this statute would seem likewise to be free from doubt.
Examples of such general laws are those which provide
that "any person" injured in his person or property as the
result of negligence in the repair and maintenance of roads
and streets, etc., may recover damages against a county or
town (Sections 2948, 2950, 4478, Vol. 3, Code, 1922)—
municipal corporations whose immunity from liability for
torts, in the absence of such enabling statutes, is the im-
munity of the State Government of which they are a part.
While such general law would have had to be restrospective
in operation, it would have been no more open to attack on
that account than is this special law.

      But the consideration that this is a special law and
3, 4  that a general law could have been made equally ef-
      fective to accomplish the purpose of the special law
is not conclusive of the constitutional question presented.
By enacting the special law the General Assembly has, in
effect, recorded its decision that a general law could not be
made applicable, and that the special law was necessary.
Under settled rules of constitutional construction every

reasonable presumption must be indulged in favor of the
validity of that decision; and while, in this jurisdiction,
whether a general law could have been made applicable in
the given case is ultimately a judicial question, the legisla-
tive judgment is always entitled to great weight, and should
not be overruled by the Courts, unless there has been a clear
and palpable abuse of legislative discretion. *Thomas v.
Railway Co., etc.,* 100 S. C., 478; 85 S. E., 50. *State v.
Hammond,* 66 S. C., 225; 44 S. E., 797.

The range of legislative discretion in determining
whether a special law is necessary or proper is ex-
ceedingly wide, and its limits may not be defined
with absolute precision. In so far as the limits of such
discretion are determinable by considerations of policy,
wisdom, and expediency, if the matter is one "about which
reasonable minds may differ, the Court will not undertake
to 'run a race of opinions upon points of right, reason and
expediency with the lawmaking power.' " *Thomas v. Rail-
way, etc., supra.* But obviously, the range of legislative
discretion in enacting special laws cannot be extended be-
yond the limits marked out by the organic law subject to
which all legislative power is exercised. Thus, as a matter
of course, the classification necessarily involved in the en-
actment of a special law must be such a classification as
infringes no constitutional inhibition and is in harmony with
all constitutional guaranties.

The question here presented turns, as we apprehend, upon
whether in enacting this special law the General Assembly
transcended the limits of its discretion fixed by the "equal
protection of the laws" clause of the State (Article 1, § 5)
and federal (Fourteenth Amendment) Constitutions. In
the case of *City of Laurens v. Anderson,* 75 S. C., 62; 55
S. E., 136; 9 Ann. Cas. 1003; 117 Am. St. Rep., 885, this
Court (Mr. Justice Gary), in holding that a statute exempt-
ing Conferedate soldiers from paying a license for carrying
on any business in a city, town, or village violated the fore-

going  clause of the State and Federal Constitutions, quoted with approval the following from *State v. Garbroski,* 111 Iowa, 496; 82 N. W., 959; 56 L. R. A., 570, 572; 82 Am. St. Rep., 524:

"Equality in right, privilege, burdens and protection is the thought running through the Constitution and laws of the State; and an Act intentionally and necessarily creating unequality therein, based on no reason suggested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the Constitution."

The rule for testing the validity of the Legislature's decision that a special law is necessary and that a general law could not be made applicable is thus stated by an able annotator (Freeman, note 93 Am. St. Rep., 111):

"A law is not constitutional if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those that stand in the same relation to the subject of the law. The Legislature may classify, for the purpose of legislation, if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others, but this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic, and which suggest a reason that may rationally be held to justify the diversity in the legislation. It must not be arbitriary, for the mere purpose of classification.  The class must be characterized by some substantial qualities or attributes, which render such legislation necessary or appropriate for the individuals of the class."

Subjected to the foregoing test it is apparent, we think, that the special law here under review denies to those not included within its provisions the equal protection of the laws, and possesses not a single feature upon which a valid classification can be based.  It attempts to exempt a single

citizen of the State from the general law which precludes all other citizens of the State from recovering damages for injuries to person or property sustained as the result of the wrongful Acts or omissions of an agent or servant of the State. It attempts to create a right to recover for such a tort in the Courts of the State, and to confer that right— denied to all others—upon a single person. Why should Mrs. Sirrine be exempted from the general law when no other citizen is so exempted? Why should Mrs. Sirrine be clothed with the substantial right to recover damages for a tort of this character when no other citizen has, or is accorded, such right? If any basis for classification can be said to exist, it must be found in the peculiar facts and circumstances of the injury alleged to have been sustained by Mrs. Sirrine. The statute discloses nothing unique or peculiar in the circumstances of the alleged injury which would serve to distinguish it, either in a legal or moral sense, from any other injury to property resulting from the wrongful Act or omission of an agent or servant of the State, or of any political subdivision thereof. But, if it did, the statute makes no attempt to classify the privilege granted Mrs. Sirrine upon the basis of anything extraordinary in the circumstances of the injury, in the aspect of their moral appeal or otherwise. The right · to recover damages is made to depend wholly upon the existence of negligence on the part of an agent or servant of the State under the · doctrine of *respondeat superior* applicable to private individuals and corporations.

Obviously, it would seem a right to recover in the Courts upon a cause of action of that character not before existing may not be conferred upon one person and withheld from all others without palpably infringing the constitutional provision guaranteeing to all the equal protection of the laws. As has been well said by the Massachusetts Court in *Bogni v. Perotti,* .224 Mass., 152; 112 N. E., 853, L. R. A., 1916F, 831:

"It is an essential element of equal protection of the laws that each person shall possess the unhampered right to assert in the Courts his rights. Without discrimination, by the same processes against those who wrong him as are open to every other person. The Courts must be open to all upon the same terms. No obstacles can be thrown in the way of some which are not interposed in the path of others. Recourse to the law by all alike without partiality or favor, for the vindication of rights and the redress of wrongs is essential to equality before the law."

To that view the express provision of our State Constitption (Article 1, § 15) requiring that "all Courts shall be public, and that every person shall have speedy remedy therein for wrongs sustained" lends strong reinforcement. If injury to property caused by the negligence of an agent or servant of the State is an actionable wrong for which one person is entitled to a remedy in the Courts, it is an actionable wrong for which every other person similiarly circumstanced is entitled to a remedy therein upon equal terms.

It is suggested that Section 2, Art. 17, of the Constitution, providing that "the General Assembly may direct by law in what manner claims against the State may be established and adjusted," confers authority to enact a special law of this character. Regardless of whether the word "claims" as used in that section may properly be interpreted to include other than legal demands (*Graham v. State, supra*), in the view above taken, that this special law goes further than merely to direct how a claim shall be established, in that it undertakes to create and confer a special privilege and a discriminatory right, it is evident that the section invoked has no controlling application.

While the argument might be elaborated from other angles and further fortified by authority, we think the reasons suggested in the foregoing discussion are sufficient to vindicate the conclusion that the special legislation here in

question is clearly in violation of the constitutional mandate that the General Assembly shall not enact a special law "where a general law can be made applicable." Subdivision 9, § 34, Art. 3.

Neither the foregoing conclusion nor the premises upon which it is predicated may be reconciled with the views announced and the conclusion reached by this Court in the case of *Sandel v. State,* 115 S. C., 168; 104 S. E., 567; 13 A. L. R., 1268. The Court, in arriving at the conclusion in the *Sandel Case* that the Act there in question was not such a special law where a general law could be made applicable as infringed the constitutional inhibition, would seem to have been largely influenced, if not controlled, by the view that the Act giving a right to recover for alleged wrongful deaths caused by the negligence of agents and servants of the State conferred no new right in favor of the Sandels and created no new liability against the State. It is there said:

"The Act does not create a liability which did not exist before its passage. The liability is one that is recognized by the common law. The only obstacle that lay in plaintiff's path to the enforcement of it was the State's immunity from suit, without its consent."

Proceeding from that postulate to the proposition that the State's immunity from suit may be waived at the pleasure or discretion of the lawmaking power, and that the Constitution (Article 17, § 2) expressly authorizes the General Assembly to "direct by law in what manner claims against the State may be established and adjusted," the conclusion was reached that the Act then under review did not violate the constitutional inhibition against special legislation. But the first premise upon which that conclusion was rested—that liability existed before the passage of the Act, and that the only effect of the law was to remove the State's immunity from suit— may not soundly be main-

tained.   That the crown or the State is not legally liable for the wrongful Acts of its officers, agents, or servants, in the absence of statute, is an ancient and well-settled rule—a rule recognized and applied by this Court in a long line of decisions.   See 25 R. C. L., 407, § 43; Labatt (1913 Ed.) Vol. 7, p. 7061.   *Foster v. Union,* 129 S. C., 257, 262; 123 S. E., 839, and cases therein cited.   Having given due recognition to that rule herein, for the reasons above indicated, we think the different conclusion reached in this case is imperatively required.   In so far, therefore, as the decision in *Sandel v. State,* 115 S. C., 170; 104 S. E., 567; 13 A. L. R., 1268, is not in accord with the views herein announced, that decision is expressly overruled.

The judgment of the Circuit Court is reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER and MR. ACTING ASSOCIATE JUSTICE JOHNSON concur.

MR. JUSTICE COTHRAN did not participate.