## GLENN v. COLUMBIA AND GREENVILLE R. R. COMPANY.

1. A train hand, sent back at night to signal an approaching train, saw it coming, although it had no head-light, but upon its emerging from a curve in a cut, he discovered that the engine was very close upon him, and in getting off the track upon which he was still standing, his foot was caught by the rail, and in extricating his foot his hand was caught by the train and crushed. From the railroad cut to where this train hand stood, the distance was too short for the train to stop. In action against the railroad company for damages, the Circuit judge granted a non-suit. *Held*, that in this there was no error, the absence of a head-light in this case not having contributed to the injury received by this train hand.
2. To recover damages for injury done to a party by a railroad company, the plaintiff must not only show negligence by the company, but also that the injury complained of was the result of such negligence.

Before FRASER, J., Richland, July, 1883.

The opinion fully states the case.

*Mr. John Bauskett*, for appellant.

*Mr. J. C. Haskell*, contra.

September 24, 1884.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    The plaintiff brings this action to recover damages for certain injuries sustained by his son, Manus Glenn, a minor, occasioned by the alleged negligence of the defendant.    On the night of February 19, 1881, Manus Glenn, who was in the employment of the defendant company as a train hand and brakeman, on a freight train on its way to Columbia, was sent down the track by the conductor, when his train stopped at Saluda Old Town to take on wood, to signal an approaching up train from Columbia.

In his testimony, Manus Glenn gives the following account of the manner in which the accident occurred : "I took the red lantern and went down the track nine telegraph poles, according to instructions from the conductor, when I heard the train approaching and saw a light from the cab of the engine.    There was a curve in the track about a hundred yards from me, and the train was a good ways on the other side of this curve when I first heard it coming and saw the light from the cab.    There was no headlight on the engine.    It was in the middle of the night, about 12 o'clock.    The night was dark and drizzling rain.    When the train entered the curve I could not see it.    I signalled the train, when I first heard and saw it, with the red light, which is a signal of danger, and the engineers must stop when they see it.    I then started to meet this train to get on it and ride back to the train to which I belonged.    When I had gone about twenty steps, I saw by the light of the fire-box under the engine that it was close on me.    I attempted to get off the track, when my shoe caught in a piece of the iron rail, a sharp splinter of it, and I had to use my hand to get my foot loose.    In jerking it loose, which I did with my hand, my hand was caught by the iron splinter running through it, and before I could get it loose the engine was on me and crushed my arm.    It was broken and crushed so badly it had to be cut off.    I was brought to Columbia.    Dr. Green cut the arm off.    I was laid up in the house for about two months.    I saw a light from this engine that run over me three times—once from the cab when I first signalled it with the red light before it entered the curve, and again saw the light

from the cab as it turned out of the curve, and afterwards the light from the fire-box from the engine when I was trying to get my foot loose from the splinter of the rail. I was hired by the company at seventy-five cents per day. My father, Britton Glenn, received and collected my wages. I had the red lantern on my arm when I was struck. I carried it back to the train. I was not instructed to stand on the side of the track in flagging trains down. I stood on the track and flagged the lantern across the track. I could have seen the engine better had there been a head-light on the locomotive; I could have seen the reflection of the light on the trees and woods when the engine was in the curve."

The plaintiff also testified that the night was dark and rainy; that there was no head-light on the engine; that he hired his son to the company and collected his wages; that the length of the up train was about sixteen cars; that the track was tolerably level, a little down grade going towards Greenville; that the train was running at the rate of about ten miles an hour, and that "with fifteen cars, can take up its own length, about five hundred feet, if every brakeman is to his place."

James Nelson, another witness for plaintiff, testified that he was a train hand and brakeman on the train which ran over Manus Glenn; dark and rainy night; no head-light on the engine; had been taken off that day as they went down and left at the shops at Helena for repairs; was to get it as they went up; were behind time, and shops were closed when they reached Helena, therefore did not get head-light; witness was on top of the train and never did see Manus's red light; took up about the length of train after striking Manus; about fifteen cars in the train and three brakemen; don't think the train could have been stopped in less than three hundred yards; before they struck Manus, the engineer blew for brakes about one-quarter of a mile from Saluda Old Town. When they first blew brakes, it would have taken one-quarter of a mile to take up train—two hundred yards past the point where Manus was struck. There was a curve in the track, and if the head-light had been burning, he (Manus) would not have seen it till it rounded the curve. Engineer might have seen Manus Glenn one hundred yards. At

that time he could not have stopped train under two hundred yards.

This, with the testimony of Dr. Green as to the extent of the injury and the necessity for amputating the arm, was substantially all the evidence adduced by the plaintiff. At the close of the plaintiff's testimony a motion for non-suit was made and granted, and plaintiff appeals upon the following grounds: 1. "Because his honor erred in granting the non-suit in this that there was evidence of gross negligence on the part of the company in not providing a head-light to the locomotive, which was running in the night time, and thereby caused the accident. 2. Because his honor held that no negligence was proved against the defendant, and that the negligence was all on the part of the plaintiff. 3. Because his honor held that running a locomotive and train of cars in the night time without a head-light, and the locomotive running over a man, was no negligence on the part of the railroad company. 4. Because his honor erred in not allowing the case to go the jury, when it is respectfully submitted that there was sufficient evidence of negligence for the jury to pass upon."

The "Case," as prepared for argument here, does not contain the slightest evidence that the Circuit judge made any such rulings as are imputed to him in the second and third grounds of appeal, and it is not admitted by the counsel for respondent that any such rulings were made. There is nothing, therefore, upon which these grounds rest, and they cannot be considered by us.

The only question left for us to determine is whether there was an entire lack of testimony to sustain all or any one of the points necessary to be established in order to enable the plaintiff to maintain his action. As is said by Simpson, C. J., in *Carrier & Harris* v. *Dorrance*, 19 *S. C.*, 32: "It is well settled that a non-suit is proper only where there is a total failure of testimony by the plaintiff either as to his whole case or to some material and essential part thereof." Was there such a failure in this case?

To determine this question, it will be necessary to consider, first, what were the points material and essential to the plaintiff's case. To enable the plaintiff to maintain this action, he must

not only show negligence on the part of the defendant, but he must go further and show that the injury complained of was the result of such negligence. Mere proof of negligence on the part of the defendant gives the plaintiff no cause of action, because there is no wrong done to him until it is shown that he has been a sufferer by reason of such negligence. It may, and doubtless would, be considered gross negligence for a railroad company to allow a train of cars, with some of the wheels cracked, to be run over a road where there were defective rails or cross-ties, or over a decaying trestle or bridge; but if a third person should be injured by such a train, not by reason of its running off the track, but by a collision with another train, or with some vehicle crossing the track, such·negligence could not constitute any foundation for a cause of action in favor of the person injured, because it could not in any way be regarded as causing the injury complained of. In such a case, the negligence of the company, though highly reprehensible, would constitute no wrong to the person injured, and would, therefore, furnish no ground for an action on his behalf.

Applying these principles to the case under consideration, in which the negligence imputed to the defendant was in failing to furnish a head-light for the engine, we find that the testimony as to such negligence was quite sufficient, as to that point, to send the case to the jury; but we look in vain for any evidence whatever tending to establish the equally material and necessary point that the injury complained of was in any way the result of such negligence. On the contrary, the testimony of the party injured demonstrates the fact that the absence of the head-light had nothing to do with causing the injury. The object of the head-light, as we suppose, is to enable the engineer to see objects ahead of him on the track, and perhaps to enable persons to see an approaching train at a sufficient distance to avoid collision with it.

Now, according to the uncontradicted testimony adduced for the plaintiff, the accident occurred at a point near a curve which rendered it impossible for the engineer to see far enough ahead, even with the very best head-light, to enable him to take up his train before it reached the point where Manus Glenn was struck,

and he himself says that he not only heard, but saw, at least three times, the approaching train before it came within one hundred yards of the point where he was struck. So that it is perfectly manifest that the absence of the head-light in no way contributed towards causing the injury complained of. There being no testimony tending to establish this material and necessary point in the plaintiff's case, there was nothing to leave to the jury, and there was, therefore, no error in granting the non-suit.

The judgment of this court is that the judgment of the Circuit Court be affirmed.