### GREEN v. ATLANTA & C. AIR LINE RY. CO. *ET AL.*

#### (126 S. E., 441)

1. NEGLIGENCE—GENERAL PRINCIPLES OF LIABILITY STATED.—The foundation of liability for negligence is knowledge, or opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury, coupled with a legal duty owed to the person injured to exercise the care of the man of ordinary sense and prudence to prevent the existence of the conditions, or the occurrence of the event, to which the injury is alleged to be traceable.

2. MASTER AND SERVANT—RULE AS TO LIABILITY OF MASTER FOR UNLAWFUL ACTS OF THIRD PERSON STATED.—Master's failure to provide servant with safe place to work does not render him liable for injuries committed by lawless acts of third persons, if he has no knowledge or opportunity to acquire knowledge of danger from acts of such persons, but he is liable if he had actual knowledge of

NOTE: On liability of master for the intentionally killing or injury of a servant by a third person, see note in L. R. A., 1917F, 753.

conditions within his control, exposing servant to such danger, or in exercise of reasonable care could have anticipated intervention of illegal acts of third persons.

3. MASTER AND SERVANT—COMPLAINT FOR INJURIES TO RAILROAD EMPLOYEE SHOT BY ROBBERS HELD TO STATE CAUSE OF ACTION.—Yard conductor's complaint for injuries sustained when he unintentionally surprised and was shot by gang engaged in car breaking and robbery in railroad yard, alleging that railroad "knowingly" maintained conditions in railroad yard, tempting thieves, robbers, and desperadoes to resort thereto for looting, robbery, car breaking, etc., and making yard an unsafe place for railroad employees to work in, and that railroad with knowledge of such conditions failed to remedy them, *held*, sufficient to state cause of action as against contention that unlawful acts of the criminals was intervening cause.

Before SHIPP, J., Spartanburg, April, 1924.   Affirmed.

Action by R. F. Green against the Atlanta & Charlotte Air Line Railway Company and another. From order overruling demurrer to complaint, defendants appeal.

The plaintiff alleges in his complaint:

(1) That the defendant Atlanta & Charlotte Air Line Railway Company is and was at the times hereinafter mentioned a corporation organized and existing under the laws of South Carolina, and owns a line of railway extending from the North Carolina State line near Grover through Gaffney, Spartanburg, Hayne, Greenville, and Seneca, S. C., and beyond to the Georgia State line, and in connection with said railway stations turnouts, yards, etc.

(2) That the defendant Southern Railway Company is and was at the times hereinafter mentioned a corporation organized and existing under the laws of one of the States of the Union, and at the times hereinafter mentioned was engaged as agent or lessee in maintaining and operating the above-mentioned line, of railway, with its turnouts, yards, etc., as a common carrier of freight and passengers for hire.

(3) That Hayne, near Spartanburg, S. C., is a junction point where the Asheville, Spartanburg and Columbia line of railway, also operated by the Southern Railway Company, joins the Charlotte-Atlanta main line above mentioned.

(4) That at Hayne there is maintained and operated a very large freight yard, where through freight trains are made up, and also where through freight trains are brought to be broken up and made into new trains to distribute freight bound to or toward Asheville, Columbia, Atlanta, Salisbury, Spencer, and other points, and where large numbers of loaded freight cars accumulate and lie over pending the breaking up and remaking up of trains; that also a transfer shed in connection with said yards is maintained and operated at Hayne, where the valuable freight in less than carload lots is unloaded and stored to be reloaded for shipment to ultimate destination; that said yards are very long, having several lead tracks for the making up and breaking up of trains, with all the bad order, storage, shifting tracks, and cross-overs necessary and proper to the operation of such yards.

(5) That the defendants, for the protection of their property and the protection of property being transported by them, and their employees engaged in handling and transferring such property while in transit, and while lying over to be diverted, maintained a force of special officers and agents.

(6) That the vast accumulation of loaded freight cars in the Hayne yards and the storage of large quantities of freight in the transfer shed at Hayne operated as a great temptation to the evil disposed, and induced thieves, robbers, and desperadoes to frequent and resort to the said Hayne yards for the purposes of looting, thieving, robbing, car breaking, and the perpetration of all manner of kindred misdemeanors and felonies, and who were, as a rule, prepared and inclined to prevent detection and make sure escape at the cost of human life.

(7) That on and prior to February 27, 1922, the plaintiff was employed by the defendant Southern Railway Company as a yard conductor in its yards at Hayne, where it

was his duty in the course of his employment to break up the incoming freight trains left there for that purpose, and to make them up into outgoing freight trains for the various points in all directions, as hereinabove indicated; that frequently plaintiff's tour of duty fell in the nighttime, the work of making up and breaking up the trains in the yards being continuous throughout day and night.

(8) That some time prior to February 27, 1922, the plaintiff complained to his superiors that, by reason of the increasing numbers of outlaws, thieves, and desperadoes that were beginning to accustom themselves to rendezvous in the yards for the purposes of pillage, thievery, car breaking, and robbery, it was becoming unsafe for the employees at work in the yards during the nighttime, and was advised that such unsafety was known, but would be remedied; that the conditions hereinabove detailed were, or should have been, known to the defendants and their officers.

(9) That, under the division system of the defendants, the Hayne yards are located in the Spartanburg Division, which includes the Hayne yards and all line of railway from Greenville to Alston, there being no other yard in said division remotely approaching the Hayne yards in size or in the amount and value of freight stored, transferred, and handled.

(10) That prior to the time of plaintiff's complaint of unsafe conditions obtaining at Hayne the defendants had maintained only two special officers and one special agent for the division, whose duty it was to protect the property from thieves, car breakers, and robbers, as well as the employees of the company, and such number was not adequate to the proper policing of the Hayne yards alone, and by reason of the inadequacy the outlaws frequenting the Hayne yards were encouraged and increased in number; that the plaintiff relied upon the assurance given when he complained that the matter would be corrected.

(11) That on February 27, 1922, the plaintiff's tour of duty as yard conductor in the Hayne yards commenced at 4 o'clock in the afternoon to continue until 12 o'clock midnight.

(12) That at about 11:30 o'clock at night, while engaged with what is known as the south lead engine, in making up a freight train for Spencer, N. C., and beyond, and while going into the northern part of the yards to pick up certain cars on track No. ――――, the plaintiff unintentionally surprised a gang of desperadoes, evidently engaged in car breaking and robbery, who, upon his approach and their apparent inevitable discovery, opened fire with pistols upon this plaintiff, and inflicted serious gunshot wounds, from the result of which the plaintiff for months languished in the hospital, suffered continuous agonizing pains, was compelled to undergo several serious operations, and incur tremendous expense in the way of medical, hospital, and physicians' bills, and sustained injuries permanent in their nature, hopelessly disfiguring and crippling the plaintiff, causing his leg to be weakened and shortened by several inches, and utterly disabling him physically from pursuing his former employment or engaging in any active work, and, in view of his limited educational advantages, permanently and almost completely disqualifying him for any gainful calling, pursuit, or employment.

(13) That the plaintiff's aforesaid injuries and sufferings were directly and proximately due to the negligence of the defendants in failing to provide the plaintiff with a safe place in which to do the work he was required to do, in that:

(a) They knowingly caused and permitted the Hayne yards to become a resort for thieves and robbers, prepared and inclined to prevent detection and secure escape, by murder, if need be, the existence of such condition being directly due to the accumulation of vast numbers of loaded freight cars and vast quantities of valuable freight in said

yards, and, by inaction, permitting it to be discovered by the evil disposed that valuable property easy to be stolen and carried away was constantly and continuously being placed and kept throughout the great length of the Hayne yards in the nighttime in a situation that it could not be adequately guarded by a force of only three men.

(b) In failing to make reasonable provision for even the protection of the property situated and kept in the yards, so as to discourage the would-be thieves and robbers, thereby emboldening them and increasing their number and activities, the failure to adequately protect the property resulting in directly hazarding the life and limb of every yard employee.

(c) In failing, after knowledge of unsafe conditions, to provide a proper police protection for the property and employees in the yards, their neglect in protecting the property directly operating as an invitation to the evil disposed.

(d) In not providing a sufficient force of officers and agents to police the yards, protect the property and employees, and rid the situation of its characteristics, which may be phrased as an attractive nuisance to thieves, robbers and desperadoes.

(e) In not increasing the force of officers and agents, after knowledge of its inadequacy to protect their employees and property in the Hayne yards, and after admitting such inadequacy and promising remedy, the Hayne yards being located outside of any municipally policed area.

(f) In not adequately providing for the lighting of said yards in the nighttime, the yards being very long and the numerous tracks for storage, etc., being practically parallel throughout the length of the yards, and being nearly always completely occupied by loaded freight cars, and there being only one line of lights in the yards, the said lights being arranged in a straight line and serving only to illuminate immediately beneath them and only the tops of the freight

cars on either side, and serving only to deepen the shadows, in which the outlaws might lurk and successfully conceal themselves, instead of serving to illuminate the yards, said line of lights being so placed as to cast shadows on either side and about the edges of the yards, thereby making it easy for outlaws both to approach and to leave the yards in the shadow, whereas the lights should have been so arranged as to surround the yards with a zone of illumination, and instead of being arranged in one continuous line they should have been "zig-zagged," or "staggered," so as to light all parts of the yards, and should have been sufficient in number for that purpose.

(13) That the plaintiff has been damaged by the negligence of the defendants as hereinabove outlined in the sum of $50,000.00.

Wherefore the plaintiff prays judgment against the defendants for the sum of $50,000.00 and the costs.

*Messrs. DePass & Wrightson* and *Frank G. Tompkins,* for appellant, cite: *Insufficient lights as proximate cause:* 109 S. C., 119; 93 S. E., 834; 53 L. Ed., 674; 28 S. E., 251; 39 So., 715; 22 S. W., 445. *Proximate cause—without intervening agent:* 32 S. C. L., 525; 54 S. C., 502. *With intervening agent:* 49 A. S. R., 199; 73 N. E., 117; 165 Pac., 831; 53 So., 981. *Promise to furnish police protection:* 25 L. R. A. (N. S.), 1186; 72 N. E., 193. Note 18 R. C. L., 653; 32 Atl., 966.

*Messrs. I. C. Blackwood* and *C. E. Daniel,* for respondent, cite: *Liability of defendant:* 93 S. C., 287. *Promise to remedy:* 18 R. C. L. Sec. 180, 181, 182; Note 40 L. R. A., 781; 4 L. R. A. (N. S.), 913; 25 L. R. A. (N. S.), 1179. *Workmen's Compensation Statutes:* 38 N. J. L., 180.

February 3, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Appeal from an order of the Circuit Court overruling a demurrer to the complaint. Let the complaint be set out in the report of the case.

The complaint, in substance, alleges that the defendants provided the plaintiff, employed as a yard conductor, with an unsafe place to work, in that the place of work, a freight railroad yard, was a customary resort for thieves and robbers induced and caused to resort there by conditions within the control of the defendants and by them negligently maintained, that the plaintiff, while in the discharge of his duty in the nighttime, at the place of work provided, unintentionally surprised a gang of desperadoes engaged in car breaking and robbery, and was by them shot and seriously wounded; that prior to the date of his injury the plaintiff had complained to his superiors of the dangers to which employees were exposed by reason of thieves and outlaws making of his place of work a customary rendezvous for purposes of pillage, etc., and "was advised that such unsafety was known, but would be remedied"; that plaintiff's injury was caused by the negligence of the defendants in failing to remove or correct the conditions which made the place of work a resort for outlaws and unsafe on that account, and in failing to provide the place of work with adequate police protecton.

The defendants demurred on the grounds that it appears upon the face of the complaint: (1) "That the alleged negligence of the defendants was not the proximate cause of plaintiff's injury"; (2) "that the proximate cause of plaintiff's injury was a direct unlawful act of a gang of thieves and robbers"; and (3) "that the legal connection between the alleged delicts of the defendants and the injury of the plaintiff was broken by an independent intervening cause, the same being a wrongful and negligent act of a band of outlaws who were the nearest responsible agency, and from which independent and intervening act the injury to plaintiff followed as a proximate result."

The validity of appellants' contentions turns upon the application to the particular facts of this case of the general principle of the law of torts that "if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." Cooley on Torts, p. 69. That principle was thus broadly stated by Mr. Justice Holmes in the libel case of *Burt v. Advertiser Newspaper Co.,* 154 Mass., 238; 28 N. E., 1; 13 L. R. A., 97:

"Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as antural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

Appellants say that, since it appears upon the face of the complaint that the injury sustained by the plaintiff was directly caused by the intervention of the wrongful, illegal, and criminal acts of independent third persons, under the foregoing principle, thus broadly stated by eminent authorities, the complaint alleges no cause of actionable negligence, and the demurrer should have been sustained. In support of that position are cited the following decisions: *Carter v. A. C. L. Ry. Co.,* 109 S. C., 119; 95 S. E., 357; 11 A. L. R., 1411. *Chancey v. N. & W. Ry. Co.,* 93 S. E., 834. *Cobb v. Great Western R. Co.,* 1 Q. B., 459. *McDowell v. Railroad Co.,* 2 K. B., 331; 337. *Atchison, T. & S. F. Ry. Co. v. Calhoun,* 213 U. S., 1; 29 S. Ct., 321; 53 L. Ed., 674. *Henderson v. Dade Coal Co. et al.,* 100 Ga., 568; 28 S. E., 251; 40 L. R. A. 95. *Thomas v. Sloss-Sheffield Steel & Iron Co.,* 144 Ala., 188; 39 So., 715. *Kelly v. Shelby R. Co.,* 22 S. W., 445; 15 Ky. Law Rep., 311. *Nickey v. Steuder,* 164 Ind., 189; 73 N. E., 117. *Fraser v. Chicago, R. I. & P. Ry. Co.,* 101 Kan., 122; 165 P., 831, L. R. A., 1917F, 749.

Conceding that the principle as stated by Judge Cooley and by Mr. Justice Holmes may be soundly applied to so large a majority of tort cases at to justify its enunciation as a general rule in the form stated by them that it is not a rule without exception or of universal application would seem to be readily apparent when examined in the light of the basic principle of the law of negligence to which all other principles are subsidiary and with which they must ultimately square. That principle is "that the foundation of liability for negligence 'is knowledge—or what is deemed in law to be the same thing, opportunity, by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury' " *Foster v. Union* [S. C.], 123 S. E., 839, 842), coupled with a legal duty owed to the person injured to exercise the care of the man of ordinary sense and prudence to prevent the existence of the conditions, or the occurrence of the event, to which the injury is alleged to be traceable. The proposition that the wrongful or illegal act of an independent third person may not be regarded as such a consequence of a tort-feasor's alleged wrong as should entail legal liability must rest, in the last analysis, upon the assumption that such a consequence is not one of which a person who assumes the discharge of the ordinary civil obligation has knowledge or the opportunity by the exercise of reasonable diligence to acquire knowledge; that it is an unnatural and abnormal intervention in the ordinary train of events and consequences not reasonably to be anticipated from the act or omission which is charged to the alleged tort-feasor as a breach of duty. Ordinarily, it may be conceded that the danger of injury to a servant from the illegal or criminal acts of independent third persons is not a danger of which the master in the discharge of his duty to provide a safe place to work, etc., has such knowledge, or the opportunity to acquire knowledge, as would impose liability for such an injury. If so, *a fortiori,* the master is not ordinarily

bound to anticipate such intervention, and is under no obligation to exercise care to provide against dangers from that source. And that is true, even though "the defendants' negligence may put a temptation in the way of another person to commit a wrongful act, by which the plaintiff is injured." Shearman & Redfield on Negligence (5th Ed.) § 25.

But, where it appears that the master has actual knowledge of conditions within his control which conduce to expose a servant in the performance of the master's work to danger from the lawless acts of third persons, and that the intervention of such illegal acts of third persons is a consequence reasonably to be expected from the maintenance of such conditions, a different case is presented. In the case at bar it is alleged that the conditions rendering the servant's place of work unsafe were "knowingly" maintained; that defendants had actual notice of the danger from the intervention of the lawless acts of third persons; and that the unsafety of the place of work from that source was recognized by the defendants as a condition calling for remedial action. Proof of that state of acts would, we think, clearly warrant the inference that the lawless act of the third persons which resulted in injury to the servant was a consequence within the actual contemplation of the defendants and was not such a consequence as could not reasonably be expected to follow in natural and ordinary sequence from the original act or omission upon which the actionable negligence is predicated. If the intervention of the lawless acts of third persons was by virtue of the defendants' knowledge of the situation, a consequence reasonably to be expected, it was not a consequence too remote to entail liability, for "that which is reasonably to be expected will be regarded [as both proximate and natural], although it may be considerably removed." *Harrison v. Berkeley,* 1 Strob., 525; 549 (47 Am. Dec. 578). In that state of the facts there remains no tenable basis for a conclusion that,

merely because the act which results in, or concurs as an efficient cause in producing, the injury was illegal in character, and was an act for which independent third persons were also liable as tort-feasors, the alleged negligence of the defendants was thereby insulated, and the causal connection broken. If the intervention is reasonably to be expected, and hence is to be regarded as a natural and proximate consequence, the fact that it consists in wrongful misconduct for which third persons might also be held legally responsible furnishes no sound reason, as we apprehend, for declining to apply the logical and well-established doctrine that an intervening cause, brought to bear by an independent, responsible human agency, will not break the causal connection, if such intervening cause was induced, produced, or set in motion by the negligence charged to the original wrongdoer. 22 R. C. L., 134, § 19; *Foster v. Union, supra.*

In the view indicated, the demurrer to the complaint was properly overruled. In the limited time at our command, a review of the decisions cannot be undertaken. None of the cases cited by appellants appear, as we think, to have been decided upon a state of facts so closely analogous to those of the case at bar as to warrant discussion. As has been well said of the decided cases involving the law of proximate cause (Moody, J., in *Atchison, T. & S. F. Ry. Co. v. Calhoun,* 213 U. S., 1; 29 S. Ct., 321; 53 L. Ed., 671) "no case exactly resembles another, and slight differences of fact may be of great importance." It is, perhaps, proper to observe, however, that our own case of *Carter v. R. Co., supra,* holding that the proximate cause of an injury to a railroad station master inflicted by a robber was not the failure to provide sufficient lights but the act of the robber involved essentially different facts. That case was correctly decided substantially upon the ground that the alleged misconduct of the master in failing to provide adequate lights about the station premises was not conduct of a character, which, according to the usual

experience of mankind, was calculated to invite or induce the intervention of the subsequent cause of the plaintiff's injury through the criminal act of a third person; the Court saying:

"There was no causal connection * * * between the two events. That kind of an injury was neither a natural nor a probable consequence which might reasonably have been expected to result from the failure to keep all the lights burning."

As pointed out above, accepting at their face value the allegations of the complaint in the case at bar, the plaintiff's injury was both a natural and probable consequence which not only might reasonably have been expected to result from the alleged delicts of the defendants, but was actually recognized as a consequence so probable as to justify the promise of remedial action.

It follows that the judgment of the Circuit Court must be affirmed.

MESSRS. JUSTICES WATTS and FRASER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.

MR. JUSTICE FRASER: I think *Coleman v. Railroad Co.,* 25 S. C., 446; 60 Am. Rep., 516, is conclusive of this case.