I think that the petition for a rehearing in this case should be granted, for the reasons stated in the petition, and for the reasons which I shall herein submit, supplementary to the dissenting opinion which has been filed by me.
In the opinion of Mr. Justice Watts I do not think that he has at all answered the principal objections urged against the validity of the judgment in this case, and this I say with the greatest respect for his discriminating sense of justice. The opinion, as I see the law, does not correctly state the rights and duties of a railroad company in respect to the obstruction of a street, at a railroad crossing, with its standing cars. It is manifestly of the greatest moment to such corporations, in the operation of trains over hundreds of crossings, that these rights and duties be clearly and correctly defined. Assuming the right, in a given case, of the company to lay its track upon its right of way, and *Page 229 
across streets that traverse it, a situation of correlative rights and duties is created. The public has the right to the use of the street or highway, and the company has the right to the use of its track at the point of intersection. Each must exercise this right with due regard to that of the other. Upon the principle of "sic utere tuo," the reasonableness of such use is the test, and not the necessity therefor.
The defendants requested the following charge:
"The use of a railroad side track for shifting cars or loading and unloading freight is a lawful use, and cannot be considered negligence or willfulness, even if a highway is temporarily obstructed thereby, unless such obstruction is for an unreasonable length of time, considered with reference to the existing circumstances."
According to my conception, that request correctly stated the law, and is entirely in harmony with the principle by which the duty of the company is to be measured, "sic uteretuo ut alienum non ladas. The Circuit Judge refused to give the charge as requested, without the modification produced by the insertion of the words "unnecessary or,"
the effect of which was to impose the burden upon the company of showing not only that the obstruction continued only for a reasonable time, but that it was a matter of necessity, and that, if the plaintiff showed either that it was not a matter of necessity, or that it continued for an unreasonable time, he made out a case of negligence against the company. It is easily conceivable that a crossing may be blocked for only a reasonable time, under circumstances which do not present a case of necessity, as I endeavored to demonstrate in my dissenting opinion. At the same time the question whether the blocking was necessary or not may well be considered in determining the other question of reasonableness.
I do not contend that the matter is controlled by Section 2922, Code of 1922, which prescribes a penalty for allowing cars to obstruct a street or highway for a longer period *Page 230 
than five minutes after notice to remove them, and concede that, irrespective of this statute, the duty at common law remains not to obstruct a crossing unreasonably; but I do not find anywhere that the right to use this part of a track, which with the right of way belongs to the company, for the uses of the company, is limited to cases of necessity.
"And a temporary obstruction, * * * by leaving cars in or across a street for an unreasonable time, may constitute a nuisance." 3 Elliott, R.R. (3d Ed.), § 1440.
"If a railroad company obstructs a highway for an unreasonablelength of time, or for a longer time than the law permits, unless it is without fault, the railroad company thereupon becomes a trespasser." Littlejohn v. RailroadCo., 49 S.C. 12; 26 S.E., 967. Walker v. Railroad Co.,77 S.C. 161; 57 S.E., 764; 12 Ann. Cas., 591.
(A more accurate statement, I think, would have been that the company thereby will be held to have created a nuisance.)
The opinion of Mr. Justice Watts in several places repeats the modification, holding that the unnecessary or unreasonableobstruction constitutes negligence.
I do not think that there can be the shadow of a doubt that the Circuit Judge committed error in his charge as to what constitutes the proximate cause of an injury. The defendants requested the following charge:
"Even if you find from the evidence that the defendant Camp Manufacturing Company and its engineer, Arthur Pulley, were negligent and willful in obstructing the crossing, but that these defendants could not reasonably have anticipated that the collision would result from such obstruction, then I charge you that under such circumstances such obstruction would not be a proximate cause of the collision, although you find the same to be a remote cause, and your verdict must under such circumstances be in favor of these defendants." *Page 231 
I think that this request was in exact conformity with the law of proximate cause. The Circuit Judge, however, refused to charge it without the modification produced by striking out the word "collision" and inserting the words "someinjury to travelers on the highway," and specifically charging:
"In order that an injury be the proximate result of an act, it is not necessary that the actor should have foreseen the particular consequences or injury which resulted. It isenough if he should have foreseen that his act of negligencewould probably result in injury of some kind to some oneto whom he owes a duty."
If a person commits an act, and should have foreseen that his act would probably result in injury of some kind to some one to whom he owes a duty, such act will be held to have been an act of negligence. It will not be held to beactionable negligence, unless the particular injury is shown to have been a result reasonably to have been anticipated from the negligent act. The tests of negligence and proximatecause are not the same. I do not contend that the actor should have foreseen the particular injury; the question is, not alone whether the act was negligent, which may be assumed, but whether the particular injury was one which naturally flowed from the act, and for that reason should have been foreseen by a person of ordinary prudence. To say that the act was the proximate cause, because it was anact of negligence, is necessarily to preclude the further vital inquiry whether it was the proximate cause of the injury.
In Glenn v. Railroad Co., 21 S.C. 466, the Court said:
"Applying these principles to the case under consideration, in which the negligence imputed to the defendant was in failing to furnish a headlight for the engine, we find that the testimony as to such negligence was quite sufficient, as to that point, to send the case to the jury; but we look in vain for any evidence whatever tending to establish the *Page 232 
equally material and necessary point that the injury complained of was in any way the result of such negligence."
In Adkins v. Railroad Co., 27 S.C. 71; 2 S.E., 849, the Court said:
"To recover damages for an injury done to a party by another, the plaintiff must not only produce evidence of negligence by such other, but also that the injury complained of was the result of such negligence."
In Petrie v. Railroad Co., 29 S.C. 303; 7 S.E., 515, the Court said:
"It is not sufficient to make out plaintiff's case that there should be simply evidence of defendant's negligence, but that there must also be some evidence that the injury complained of was the result of such negligence."
In Barber v. Railroad Co., 34 S.C. 444; 13 S.E., 630, the Court said:
"It was not sufficient, to sustain a case of this kind, to show negligence, but there must be also some evidence showing that the injury complained of was the result of such negligence."
In Ruff v. Railroad Co., 42 S.C. 114; 20 S.E., 27:
"It was not only necessary to introduce testimony tending to show that the injury to the horse was the result of such negligence."
So it is clear that the proof of negligence is one thing, and proof that the negligence was the proximate cause of the particular injury is an entirely different one. As a matter of fact it was not at all necessary for the plaintiff to prove that an injury "of some kind to some one" would probably result from the unreasonable obstruction of a crossing; the law stamps it as a negligent act. The charge necessarily withdrew from the jury the issue whether the negligence was the proximate cause of the collision.
Mr. Justice Watts, in disposing of this objection, quotes from Sandel v. State, 115 S.C. 180; 104 S.E., 567; 571 (13 A.L.R., 1268), as follows: *Page 233 
"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one."
By reference to the opinion from which this quotation is made (somewhat garbled in the typewritten copy of Mr. Justice Watts' opinion), the rule to which reference is made appears in the defendant's request to charge:
"An injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable,"
— as to which the Court remarked:
"As a general statement of the law, the request was correct. The same request was charged in Miles v. TelegraphCo., 55 S.C. 403, 420; 33 S.E., 493, and approved by this Court."
There follows the statement:
"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted," — as to which there can be no objection. It is followed by the statement:
"It is enough that he should have foreseen that his negligencewould probably result in injury of some kind to someone,"
— a declaration absolutely inconsistent with the rule which had been previously announced, and making the test of proximate cause the existence of negligence.
In the case of Dallas v. Maxwell (Tex.Com.App.),248 S.W., 667; 27 A.L.R., 931, cited by Mr. Justice Watts, as sustaining the charge, the Court said:
"Whether injury might result to some one whose relation to the act or omission is wholly dissimilar or unanalogous *Page 234 
to that of the injured party is a purely abstract and immaterial question."
In the case of Wilson v. Railroad Co., 30 N.D., 456;153 N.W., 429, L.R.A., 1915-E, 995, also cited by Mr. Justice Watts, the precise distinction for which I am contending is sustained. The Court says:
"There can be no question that the defendant must have anticipated that the fire would be injurious to some one.
The act, therefore, was negligent and gives rise to a cause of action. The only question to be determined is whether the injury to the plaintiff was a proximate result of that act. If so, damages can be recovered therefor, even though they were not anticipated."
The test of proximate cause is thus stated by the Supreme Court of the United States:
"In order to warrant a finding that negligence * * * is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen
in the light of the attending circumstances," not that any other injury ought to have been foreseen. Milwaukee,etc., R. Co. v. Kellogg, 94 U.S. 469; 24 L.Ed., 256.
"One is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man." Atchison, etc., R. Co.v. Calhoun, 213 U.S. 7; 29 S.Ct., 321, 323
(53 L.Ed., 671).
In the opinion of Mr. Justice Watts, no attention at all is given to the exception assigning error in the charge that a failure of a railroad company to give the statutory signals for a highway crossing raises a presumption that such failure was the proximate cause of a collision which may have occurred.
The Circuit Judge charged as follows:
"When the signals are not given, as and in the manner provided by statute, and an injury occurs at the crossing *Page 235 
of a railroad and public highway, a presumption would arise that the failure to give the signals is the proximate cause of the injury. But such presumption would be rebuttable by evidence, and the jury should consider any and all evidence that may be in the case, in determining the question of proximate cause."
The defendant Coast Line excepted to this charge upon this ground:
"This was error, since the violation of a statute, although declared negligence per se, must be shown to have been the proximate cause of the injury, and the burden of showing this devolves upon the plaintiff throughout."
After some variant decisions, this Court has finally settled upon the doctrine declared in Whaley v. Ostendorff, 90 S.C. 281;73 S.E., 186, in which it is distinctly held that, while the violation of a city ordinance is negligence per se:
"The fact that there was negligence per se does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the further question whether such negligence was the direct and proximate cause of the injury."
The latest deliverance upon the subject is the case ofCirsosky v. Smathers, 128 S.C. 358; 122 S.E., 864, in which it is held:
"That the violation of a statute, although declared negligenceper se, must be shown to have been the proximate cause of the injury, or at least a contributing proximate cause, is abundantly shown by the authorities and sustained by common sense and justice."
In the last-named case an array of authorities is cited, sustaining the proposition. The reason for the rule, which in every case is the anchor of the rule, is thus expressed in the Cirsosky case:
"The only difference between an act which the law declares negligence (that is, an act which is negligence per se), and an act of negligence, is in the particular branch of the legal *Page 236 
machinery of the trial which adjudicates the question and characterizes the act; in the one case the Judge, and in the other the jury. The further essential to liability (the causal relation between the act and the injury) is unaffected by the distinction. It is just as necessary to show that the act declared negligence per se was the proximate cause of the injury as to show that an act so declared by the jury was such cause."
As Mr. Elliott says in 3 Elliott, Railroads (3d Ed.) § 1648, p. 503:
"Ordinarily the omission of the statutory duty [of giving the required signals on approaching a crossing], is negligenceper se, and, where the omission is established, such negligence arises as a matter of law; but such omission by no means conclusively establishes the company's liability, for the injured party must have been free from fault, and the negligence of the company must have been the proximate cause of the injury in order to enable him to recover. * * * In no event is the omission to give the statutory signals sufficient of itself to make out a case, for there must be evidence showing that it was the proximate cause of the injury. * * * The consequences of an act or omission do not of themselves show that an act is not negligent, and it is not necessary, in order to render an act or omission negligent, that it produce some disastrous result. Negligenceper se may work no serious injury to any person, not because it is not wrongful in itself, but because no one is in a position at a particular time to be injured. The liability of the wrongdoer to the person injured, is, however, generally dependent upon the element of proximate cause."
"While this statute subjects railroad companies to liability for the damages occasioned by its violation, it does not confer a right of action upon the person injured, unless the omission of the signals caused the disaster." Horn v. RailroadCo. (C.C.A.), 54 F., 301. *Page 237 
"It is evident from this language that the failure to give signals must have occasioned the accident — that is, must have been the proximate cause of it — before a recovery can be had. * * * Before, therefore, the plaintiff can recover because the signals were not given, he must cause it to appear that this failure of duty brought about the disaster."Pennsylvania Co. v. Rathgeb, 32 Ohio St., 66.
See, to the same effect, cases cited in note 37 to Section 1648, 3 Elliott, R.R. (3d Ed.), p. 505, from the Courts of Alabama, Colorado, Delaware, Illinois, Indiana, Kansas, Maryland, Missouri, Ohio, Texas, Iowa, Kentucky, Louisiana, Utah, Virginia, and Wisconsin all in accord with the rule declared by this Court as late as April, 1924, in theCirsosky case.
Section 4925 of the Code of 1922 prescribes two essential elements to recovery under the signaling statute, Section 4903; the neglect to give the signals and that such neglect contributed to the injury, which has often been held contributedas a proximate cause. It is familiar law that one who claims the benefit of a statutory remedy must bring himself within the statutory condition. As stated above, this exception has not been considered in the leading opinion, in disregard of Article 5, Section 8, of the Constitution, mandatory in all its terms, that:
"Every point made and distinctly stated in the cause and fairly arising upon the record of the case shall be considered and decided, and the reason thereof shall be concisely and briefly stated in writing and preserved with the record of the case."
The verdict of the jury exonerated the engineer of the Camp Company's train and the engineer of the railroad company's train from all negligence in connection with the collision. In other words, it is an adjudicated fact in the case that Pulley, the engineer of the Camp train, did not
place and keep a train of cars across the street, obstructing the railroad crossing unnecessarily and for an unreasonable *Page 238 
time, and without safeguards, lights, or warning to the publicof such obstruction, in violation of law. Notwithstanding this specific and unalterable adjudication, it is sought to hold the Camp Company liable upon the principle, as stated:
"That where the servant or employee sued was not the only agency, under the pleadings and evidence, which could have committed the wrong, then acquittal of the servant is not a discharge of the master."
There can be no doubt of the correctness of this proposition; but in conformity with its terms the allocation of such other agency, to whose participation the wrong may be ascribed, must be justified by the pleadings and the evidence. I do not think that it can be done as to either, in this case.
This question was last considered by this Court in the case of Durst v. Railroad Co., 130 S.C. 165; 125 S.E., 651
(decided Dec. 10, 1924). The Court there held that, even in a case involving the relation of carrier and passenger,where there is no general allegation of negligence againstthe carrier but only a specific charge against an employee, with the resulting imputation of negligence upon the carrier, there could be no recovery based upon the presumption of negligence against the carrier, or upon proof of negligence of some other employee of the carrier.
"In the absence of a general allegation of negligence on the part of the master, no valid reason appears for departing from the salutary rule that the plaintiff must rely upon the specifications made" — citing numerous authorities sustaining that declaration.
The allegation of the complaint, so far as the Camp Company is concerned, reads thus:
"Defendant Camp Manufacturing Company and its engineer, Arthur Pulley, * * * had placed and kept a train of cars on a track of Atlantic Coast Line Railroad Company and across the public highway and crossing of said road, obstructing the crossing of said highway and said railroad *Page 239 
unnecessarily and for an unreasonable length of time, and without any safeguards, lights, or warning to the public of such obstruction."
This is clearly not a general charge of negligence against the Camp Company, but a specific charge against its engineer in unreasonably obstructing the crossing and without safeguards, lights, or warning to the public of such obstruction, with the resultant imputation of negligence to the Camp Company — acts of commission and omission of the engineer. It manifestly was not intended to charge that, after the engineer had obstructed the crossing, there was present negligence on the part of the company in not putting out the safeguards, lights, and warnings, for it could not have been cognizant of the act of the engineer. Such being the case, the plaintiff, concluded by the specific allegations of negligence on the part of the engineer, had no right to recover upon any other act of negligence, either of the Camp Company or of some other servant of the company than that of the engineer.
It is an equally adjudicated fact in the case, by reason of the verdict in favor of the engineer of the passenger train, that he did not operate the train at a high, excessive, and dangerous rate of speed, and that he did not operate it without proper or adequate lookout, safeguards, and warnings, and without giving any proper or adequate signals of its approach. The allegations of the complaint in regard to these matters do not contain a general allegation of negligence against the railroad company, and for the same reason, as above stated in reference to the Camp Company, the plaintiff is confined to the specific allegations of negligence on the part of the engineer, except that it is also specifically alleged that the railroad company acquiesced in, consented to, and approved of the act of the Camp Company and its engineer in obstructing the crossing.
I think, therefore, that it is clear that the allegations of negligence against the railroad company, in reference to the *Page 240 
operation of the train by the engineer, go out of the case, by reason of the exoneration of the engineer in the verdict of the jury, and that the plaintiff is confined to the remaining act of negligence charged to the railroad company by reason of its alleged acquiescence in, consent to, and approval of the conduct of the engineer of the Camp train in unreasonably blocking the crossing without safeguards, lights, and warnings to the public of the obstruction. Nothing else is charged against the railroad company.
I really do not think that the matter of acquiescence in the act of the engineer is of any consequence in the case at all. It is manifest that the railroad company allowed the Camp Company, for the mutual benefit of both, to connect their spur track with the side track which ran close to the warehouse, and to operate their train upon that side track. The railroad company thus became practically a guarantor of the proper operation of trains on that side track, so far as the public was concerned. 1 Elliott, R.R. (3d Ed.), § 541. If, therefore, the Camp Company negligently obstructed the crossing, and one was injured as a proximate result of such obstruction, the railroad company, as well as the Camp Company, would be responsible in damages therefor. So that it makes no difference whether Clintworth, the station agent of the railroad company, advised Pulley that he could block the crossing for 10 minutes, or not, if as a matter of fact Pulley did block the crossing with his flat cars an unreasonable length of time, and failed to take the alleged proper precautions to warn the public of the obstruction, and the plaintiff was injured as a proximate result of such acts of commission and omission.
The real questions therefore, are whether, as the case stands, regardless of the alleged directions of Clintworth, it has been established that Pulley was negligent in the matters complained of, and, if so, was the plaintiff injured as a proximate result thereof? As to those questions the answers must be the same. The jury has settled the questions as to *Page 241 
Pulley's negligence. If Pulley was not negligent, the Camp Company was not; if the Camp Company was not negligent, the railroad company was not.
But, assume for the purpose of argument that Pulley was negligent as alleged, the vital question is: Did the negligent obstruction of the crossing, as a proximate cause, produce the collision between the passenger train and the automobile? Ordinarily, of course, the issue of proximate cause is one for the jury; but where the facts are all admitted, or not in controversy, and only one reasonable inference can be drawn from them, the issue is for the Court.
I can add but little to what I have said upon this question in my dissenting opinion. Under the settled rules of proximate cause, before the negligent obstruction of the crossing can be considered the proximate cause of the collision, the conclusion must be drawn that the intervening causes, the failure of the railroad engineer to give the signals for the crossing and the consequent entry of the occupants of the automobile upon the crossing, were both the probable and natural results, which should have been foreseen by the engineer of the Camp train. If, as a matter of fact, so found by the jury in the exoneration of the engineer of the passenger train, the signals were given, the entry upon the crossing was an intervening efficient cause, without the semblance of an excuse, amply sufficient to break the continuity between the act of obstruction and the collision. If, as claimed by the plaintiff, the engineer of the passenger train failed to give the statutory signals, and that the occupants of the car drove upon the track without knowledge of the approaching train, then unquestionably the neglect of the engineer was an intervening efficient cause of the collision, amply sufficient to break the continuity between the act of obstruction and the collision. It could hardly be contended that the obstruction caused the engineer to neglect his duty; if not, there could have been no causal connection between the two, a perfectly plain case of an independent intervening *Page 242 
cause. See Green v. Railroad Co., 131 S.C. 124, at page 132; 126 S.E., 441, 443 (38 A.L.R., 1448), where the following quotation from Cooley is made:
"If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."
It seems to me that the case of Foster v. Union, 129 S.C. 257;123 S.E., 839, is conclusive of the matter. At page 269 (123 S.E., 843) it is said:
"Obviously, the foresight which the law imputes to a tortfeasor cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of an injury. * * * In that situation we think the act of the father was such an efficient, intervening, responsible cause of the plaintiff's injury as would as a matter of law make of that act the proximate cause of the injury, and the alleged negligent placing of the wires in Lawson Avenue merely the condition by which the injury was made possible, and not a concurring proximate cause thereof."
A very clear statement of the rule appears in the case ofSteenbock v. Country Club, 110 Neb. 794; 195 N.W., 117:
"It is not sufficient that the negligence charged furnishes only a condition by which the jury is made possible, for if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury."
So far, then, as the obstruction being the proximate cause of the collision is concerned, it is absolutely immaterial whether the passenger train was properly operated by signals, lookout, and warning, or not. If it was not, the neglect was *Page 243 
an intervening efficient cause of the collision; if it was, the inexcusable entry upon the track was an intervening efficient cause neither of which could have been connected in a causal degree with the obstruction.
The opinion of Mr. Justice Watts declares that there was evidence tending to show that the railroad company provided no lights at the street crossing; that it had no flagman there to warn approaching travelers of the presence of the obstructing cars; that the Camp Company was operating its train in violation of Section 4898, which requires the presence of one brakeman on the last car of a freight train. It is a sufficient answer to these suggestions that no such acts of negligence are alleged in the complaint; as to the railroad company, the complaint does not count upon a breach of duty on its part to safeguard, light, or warn. It only alleges that it acquiesced in, consented to, and approved of the alleged delinquencies of the Camp Company, through its engineer — delinquencies which the verdict has established did not exist.
Mr. Justice Watts summarily dismisses the objection to the testimony of Pinckney, detailing, in reply to the denial of Huggins, the declaration of Huggins, who was not a party to the suit nor an employee of either defendant, to the effect that the collision would not have occurred if the Camp Company had not obstructed the crossing, with a quotation from the case of Smoak v. Martin, 108 S.C. 474;94 S.E., 869:
"We shall not reverse a judgment because some questionable testimony was allowed, if questionable it was, where there is a large sufficiency of competent testimony to support the verdict."
In the first place the testimony of the witness in that case was held admissible; it was not even questionable. In the case at bar the testimony was upon the vital point in the case, and was not simply questionable, but absolutely inadmissible and exceedingly hurtful. There was not only not *Page 244 
a "large sufficiency of competent testimony to support the verdict," or to sustain the contention that the obstruction was the proximate cause of the collision, but abundant testimony to show that it was not and could not possibly have been.
I give notice that, if the petition for a rehearing is not granted and the Court declines to consider the fifth exception of the appellant railroad company, in violation, I respectfully submit, of the Constitution of this state as above indicated, I shall ask that the Court en banc be called to the assistance of this Court in the final decision of this case. If that be denied, I am assured that the property of the defendants will be taken from them without due process of law, in violation of the Constitution of this State and of the United States.